**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                                   :
CESAR CASTILLO,                    :
                                   :      Civil Action
            Petitioner,            :      No. 05-5076 (FLW)
                                   :
      v.                           :      **O P I N I O N**
                                   :
FBOP, et al.,                      :
                                   :
            Respondents.           :
_____:

**APPEARANCES**:

    CESAR CASTILLO, Petitioner pro se
    ID. # 36952-054
    F.C.I. Fort Dix
    Fort Dix, New Jersey 08640

    CHRISTOPHER J. CHRISTIE, United States Attorney
    DOROTHY DONNELLY, Assistant U.S. Attorney
    402 East State Street
    Trenton, New Jersey  08608
    Attorneys for Respondents

**FREDA L. WOLFSON, District Judge**

Petitioner CESAR CASTILLO, (hereinafter "Petitioner"), an inmate confined at the Federal Correctional Institution at Fort Dix, New Jersey ("F.C.I. Fort Dix"), filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (hereinafter "Petition"). Petitioner's Petition is (1) contesting lack of representation by counsel during Petitioner's disciplinary hearing (hereinafter "Good-Time Credit Claim"); and (2) demanding "findings [that]

sanctions in excess of suggested standards" were imposed upon Petitioner and violated Petitioner's rights under the Eighth Amendment prohibition against cruel and unusual punishment and Petitioner's Fourteenth Amendment Equal Protection rights (hereinafter "Conditions of Confinement Claim"). See Pet. at 5, 7.

Respondents in this action filed an Answer (hereinafter "Answer") asserting that Petitioner's Petition "should be denied because the procedures used were constitutionally adequate." Ans. at 2.

Having thoroughly examined the papers and considered the arguments of the parties, this Court denies the Petition.

**LEGAL STANDARD**

"Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified." See Habeas Rule 2(c). Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d

Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912, 90 S. Ct. 2206, 26 L. Ed. 2d 566 (1970).

**FACTUAL BACKGROUND**

On February 22, 2005, Petitioner was issued an Incident Report charging him with "Possession of Anything Unauthorized and Use of the Telephone for Abuse Other Than Criminal Activity, violations of the Federal Bureau of Prisons Codes 305 and 297." See Ans., Ex. D. According to the report, a corrections officer, while "conduct[ing] a search of [P]etitioner's wall locker[,] removed the front face of a drawer [and] found a fully functional and activated cellular phone and 30 books of stamps."[1]  Ans. at 5 (citing Ex. D). "Petitioner was subsequently placed in the Special Housing Unit pending a hearing for a violation of Bureau [of Prison's] regulations." Id.

Petitioner's initial hearing was held on February 25, 2005, and the incident was referred to the DHO for final disposition. See id. Petitioner's DHO hearing was held on March 1, 2005. See id. Three days prior to the DHO's hearing, Petitioner waived his right to have a staff representative representing Petitioner at the hearing. See id. At the conclusion of the hearing, the DHO

---

[1] It appears that Petitioner bought the cellular phone, fully operable, from another inmate for $900.00; and the value of Petitioner's stamps was $200.00. See Pet., Mem., Exs. 1, 5.

determined Petitioner committed the prohibited acts and sanctioned Petitioner with (1) loss of good-time credit, and (2) loss of privileges.

With respect to his loss of good-time credit, Petitioner was sanctioned with disallowance of forty days good-time credit (twenty-seven days for the violation related to the cellular phone, and thirteen days for the violation related to the stamps).[2]  See Ans. at 6; Pet. at 4.  With respect to loss of privileges, Petitioner was originally sanctioned with eight years loss of telephone and visitation privileges for violation related to the cellular phone and eight years loss of visitation privileges for the violation related to the stamps, see Pet., Me., Ex. 2; Ans. at 6, but each of these sanctions was eventually reduced to two years. See Ans. at 7.  A copy of the DHO hearing report was given to Petitioner on March 3, 2005.  See Ans. at 6.

Petitioner currently contends as follows:

GROUND TWO: Whether petitioner's Sixth amendment [r]ight[s] were violated by . . . loss of good[-time] credit . . . without a proper hearing while being represented by counsel. [As a result of] investigation .

---

[2] There appears to be a discrepancy with regard to the loss of good-time credit for the violation related to the stamps. According to Petitioner, sanctions related to the stamps yielded fifteen--rather than thirteen--days of loss of good-time credit. See Pet., Mem. at 9.  However, the Disciplinary Hearing Report furnished by Petitioner, see Pet., Mem., Ex. 2, indicates--same as Respondents' Answer--that the sanction was thirteen rather than fifteen days.  Therefore, for the purposes of this Opinion, the Court adopts "thirteen days of loss of good-time credit" as the sanction related to the stamps.

> . . DHO Officer . . . issued sanctions of 27 days loss loss of good[-]time credit [for the violation related to the cellular phone] and 15 days loss of good[-]time credit [for the violation related to the stamps]. However, [the] DHO [Officer] never made a finding of concurrent or consecutive sentences. So[,] in effect[,] will petitioner be kept in prison 27 days past his projected release date or 55 days past his projected release date? As such, petitioner is left in a quand[a]ry as to his actual release date in violation of his Sixth Amendment [r]ights . . . .
>
> GROUND THREE: Wehether petitioner's Eighth Amendment [r]ights against [c]ruel and unusual punishment [were] violated [by excessive sanctions in the form of loss of telephone and visitation privileges]?
>
> GROUND FOUR: Whether petitioner's . . . Equal Protection [rights] were violated when he was separated into a previously never before created class of inmates that required sanctions [in the form of loss of telephone and visitation privileges] so sever[e] that they exce[]ed any sanction previously given to a federal inmate?

Pet., Mem. at 9-12.

## DISCUSSION

### I.   Loss of Good-Time Credit

It shall be noted at the outset of this discussion that the Court is not entirely clear as to the nature of the allegations set forth by Petitioner in his Petition, since Petitioner's line "[h]owever, [the] DHO [Officer] never made a finding of concurrent or consecutive sentences. So[,] in effect[,] will petitioner be kept in prison 27 days past his projected release date or 55 days past his projected release date?" leaves the Court wondering: (1) whether Petitioner chose to utilize the term "sentences" with respect to the loss of good-time credit sanctions at issue and, if

yes, complaints about his uncertainty as to whether the 13-day sanction for the stamp-related violation would "run concurrently," that is, overlap, with the first 13 days of Petitioner's 27-day sanction for the cell-phone-related violation; and (2) how did Petitioner arrive at the number of 55, since neither the sum of 27 and 13, nor the sum of 27 and 15, yields the total of 55.[3]

If this Court correctly surmises that Petitioner alleges an injury in the form of Petitioner's uncertainty as to whether his loss of good-time credit sanctions are to overlap, Petitioner's allegations fail to state a claim under 28 U.S.C. § 2241,[4] even though Petitioner alleges violations of his Due Process Fifth Amendment rights and his right to counsel under the Sixth Amendment.

---

[3] According to the documents furnished by the prison officials to Petitioner and copied by Petitioner to the Court, the sanctions imposed for each violation were, invariably, listed *separately* for each violation. See Pet., Mem., Ex. 2, 5 at 2. Hence, this Court finds neither an ambiguity nor a misrepresentation on the part of the prison official with respect to the sanctions imposed, since the plain meaning of the language employed in these documents indicates that these sanctions are *not* to overlap or, as Petitioner would probably put it, the sanctions are to "run consecutively." Therefore, it appears to this Court that Petitioner was clearly sanctioned with the total of forty days of loss of good-time credit (since, according to this Court's best calculations, the sum of 27 and 13 should be 40).

[4] Petitioner concedes that he committed the offenses charged, that he was given a notice and a due hearing; Petitioner contests only the severity or the ambiguity of sanctions. See Pet., Mem. at 2-3.

### A.     Fifth Amendment Due Process Claim

While the United States Supreme Court ruled in <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973), that a habeas application is the proper (and sole) remedy for a prisoner to challenge the duration of his confinement, including that arising from the prisoner's unconstitutional *deprivation* of good-conduct credit, neither Section 2241 nor the ensuing case law suggest that the prisoner's *lack of certainty* about the meaning of the language setting forth the prisoner's loss of good-conduct credit qualifies as a cognizable violation of the prisoner's constitutional rights. <u>See</u> 28 U.S.C. § 2241.

Moreover, even if Petitioner inartfully challenges the actual loss of good-time credit rather than Petitioner's uncertainty about the language, Petitioner's Due Process claim has no merit. Liberty interests protected by the Due Process Clause of the Fifth Amendment may arise under the Due Process itself or may be created by federal statutes or regulations. <u>Cf.</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 483-484 (1995). But "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." <u>Id.</u> at 478. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison

authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976); see also Vitek v. Jones, 445 U.S. 480, 493 (1980).

In Sandin v. Conner, the United States Supreme Court announced a new standard for determining whether a state has created a liberty interest for convicted prisoners.  "The Court explained that mandatory language in a state law or regulation can create a protected liberty interest only if the alleged deprivation 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Torres, 292 F.3d 141 at 151 (quoting Sandin, 515 U.S. 484).  Although the Third Circuit has not considered the issue, federal courts have generally found that, "[w]hile Sandin addressed state-created liberty interests under the Fourteenth Amendment, its methodology applies equally to Fifth Amendment claims involving federal prison regulations." Crowder v. True, 74 F.3d 812, 814 (7th Cir. 1996); see also Tellier v. Fields, 280 F.3d 69, 79-83 (2nd Cir. 2000); Babcock v. White, 102 F.3d 267, 274 (7th Cir. 1996).

Under Sandin, Petitioner can make a valid Due Process challenge only if his loss of good-time credit was an "atypical and significant hardship" in relation to the ordinary incidents of prison life. Sandin, 515 U.S. at 484.  However, loss of good-time credit in the amount of the days at issue is expressly permissible under the applicable regulations customarily applied to other prisoners committing similar violations and, therefore, these

sanctions cannot qualify as an "atypical" hardship.  See Rutledge v. AG of the United States, 163 Fed. Appx. 120 (3d Cir. 2006) (discussing exactly the same forty days loss of GTC sanctions, same underlaying regulations and nearly identical violations).  Thus, Petitioner's Due Process claim has no merit.

**B.   Six Amendment Right to Counsel Claim**

Petitioner's Sixth Amendment claim similarly lacks merit.  Not only does Petitioner's Petition fail to clarify what could have been possibly changed with respect to Petitioner's loss of good-time credit had Petitioner been represented by counsel at the disciplinary hearing, Petitioner, by law, had *no* right to counsel during that hearing.  The matter was squarely addressed in the decision of the Supreme Court of the United States in Wolff v. McDonnell, 418 U.S. 539 (1974), and various opinions of the Court of Appeals for the Third Circuit.  See, e.g., Perez v. McKean, 136 Fed. Appx. 542 (2005); Burkholder v. Newton, 116 Fed. Appx. 358 (2004).[5]

---

[5]

In fact, the Burkholder Court expressly addressed the issue of loss of good-time credit and affirmed the district court's denial of the inmate's 28 U.S.C. § 2241 petition alleging, inter alia, that the inmate's due process rights were violated by lack of counsel.  See 116 Fed. Appx. at 362 ("the burden of proof in a disciplinary hearing does not have to be beyond a reasonable doubt[; and] there is no right to counsel at such hearings, the prisoner may be prohibited from cross-examining witnesses, and evidence that would be excluded in a normal prosecution can be used") (citing Wolff, 418 U.S. at 556, and quoting Rusher v. Arnold, 550 F.2d 896, 899-901 (3d Cir. 1977)).

Since Petitioner was not entitled to counsel in disciplinary proceedings, Petitioner cannot claim that lack of such counsel violated Petitioner's Sixth Amendment rights. See Superintendent v. Hill, 472 U.S. 445, 454 (1985); Wolff, 418 U.S. at 556; Perez, 136 Fed. Appx. at 543-44; Burkholder, 116 Fed. Appx. 358.

## II.  Loss of Privileges

With respect to loss of privileges, Petitioner's application is nearly identical to that discussed by the Court of Appeals for the Third Circuit in Rutledge, 163 Fed. Appx. 120.  In Rutledge,

> [the petitioner] was issued an incident report charging him with abuse of the telephone, possession of anything

---

[During a disciplinary hearing, an inmate is only] entitled to procedures sufficient to ensure that his interest in his Good Time Credit was not arbitrarily abrogated.  Specifically, he had to be afforded the following procedural protections: (1) an impartial tribunal; (2) advance written notice of the charges and underlying evidence; (3) an opportunity to call witnesses and present documentary evidence (to the extent compatible with the needs of the prison); (4) aid from a fellow inmate or staff representative, if [the inmate] were illiterate or if the issues were complex; and (5) a written statement by the factfinders describing the evidence relied on and the reasons for disciplinary action taken.  In addition, to comport with the requirements of due process, the decision of the disciplinary hearing board had to be supported by *some* evidence.

Perez, 136 Fed. Appx. at 543-44 (citing Wolff, 418 U.S. at 556, and Superintendent v. Hill, 472 U.S. 445, 454 (1985)).
Since Petitioner in the case at bar was duly provided with each of the above-listed protections, plus was offered -- but voluntarily chose to waive -- representation by a staff representative, see Ans. at 11 (citing Ans., Ex. C), Petitioner's due process rights were not violated.

> unauthorized, and conduct that disrupts the running of the institution. The charges were based on the discovery of a cell phone which a friend of [the inmate] brought him on a visit to F.C.I Fort Dix. At a hearing before a Discipline Hearing Officer (DHO), [the petitioner] admitted that the cell phone was his . . . and that he had used the phone while in custody. Based on [the inmate's] admissions, the DHO found that Rutledge had committed two infractions: (1) non-criminal telephone abuse in violation of Code 297; and (2) possession of anything unauthorized in violation of Code 305. The DHO imposed sanctions including forfeiture and disallowance of [good-time credit], disciplinary segregation, and . . . loss of telephone privileges and visitation privileges. [The petitioner] challenged the DHO's decision by filing a habeas corpus petition in [which he] challenges the severity of the sanctions imposed. The District Court . . . ruled that the sanctions imposed were permissible, and denied Rutledge's habeas petition. [The Appellate Court] agree[d] fully with the District Court's [and found that] the applicable regulation permit[ed] forfeiture of up to 60 days [good-time credit, thus validating the] disallowance of up to 27 [days of good-time credit], the precise sanction the DHO imposed on [the petitioner. Furthermore, the Court concluded that,] for his Code 305 infraction, [the petitioner] was [duly] disallowed 13 days [good-time credit] within the limits prescribed by the regulation. [The Court concluded by stating that,] to the extent [the petitioner] complains about the loss of visitation privileges, the regulations permit the loss of privileges[, and] the loss of visitation privileges [was] especially appropriate.

Rutledge, 163 Fed. Appx. at 120-22.

In the case at bar, Petitioner was found guilty of exactly the same violations (and subjected to the very same sanctions under the very same regulations) as the petitioner in Rutledge, see Pet., Ex. 2 (listing Code 297 and Code 305 as basis for the choice of sanctions); and--same as in Rutledge--Petitioner conceded that he indeed committed the violations at issue, that the Codes applied corresponded to his violations, that he was given a notice and a

hearing, and that evidence supported the finding made by the disciplinary officer. See Pet., Mem. at 4-9, Rutledge, 163 Fed. Appx. 120. Hence, same as the Third Circuit in Rutledge, this Court fathoms no reason to find Petitioner's sanctions in violation of Petitioner's Due Process rights.

The fact that, in addition to setting forth a Due Process claim, Petitioner invokes the Eighth and Fourteenth Amendments does not alter the result.

### A.   Eighth Amendment Claim

While the Eighth Amendment to the United States Constitution prohibits infliction of cruel and unusual punishments on those convicted of crimes, see Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981), this proscription could be violated only by an "unnecessary and wanton infliction of pain *contrary to contemporary standards of decency*." Helling v. McKinney, 509 U.S. 25, 32 (1993) (emphasis supplied).

To state a claim under the Eighth Amendment, an inmate must allege both objective and subjective components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the *minimal civilized measure of life's necessities*' . . . are sufficiently grave to form the basis of an Eighth Amendment violation." Helling, 509 U.S. at 32 (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)) (emphasis supplied). This component requires that the deprivation sustained

by a prisoner be extremely serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 9 (1992). In other words, an inmate may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care and personal safety. Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). Finally, the subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson v. Seiter, 501 U.S. 294, 303 (1991), so an inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to the inmate." Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

Petitioner's allegations fail to satisfy even the objective element,[6] since loss of privileges, in general, does not amount to infliction of cruel and unusual punishment; and loss of visitation and telephone privileges is no exception to this rule. See Overton

---

[6] Nor does Petitioner sets forth any allegations suggesting that prison officials sanctioned Petitioner with "deliberate indifference to a substantial risk of harm" to Petitioner.

v. Bazzetta, 539 U.S. 126 (2003) (withdrawal of visitation privileges for at least two years was not a dramatic departure from accepted standards for conditions of confinement, nor did such regulation create inhumane prison conditions, or deprived the inmate of basic necessities); accord Cook v. Warden, FCI Fort Dix, 2005 U.S. Dist. LEXIS 33803 (D.N.J. Dec. 16, 2005) (finding forfeiture of telephone privileges proper for a violation of Code 297); Leon v. Schaaff, 2005 U.S. Dist. LEXIS 22462 (D.N.J. Sept. 23, 2005) (lost commissary and telephone privileges and placement in disciplinary confinement do not impose atypical and significant hardship upon an inmate). Indeed, telephone and visitation contacts do not qualify as minimal life's necessities, such as adequate food, clothing, shelter, sanitation, medical care and personal safety. Therefore, the Court finds that Petitioner's loss of visitation and telephone privileges did not violate Petitioner's Eighth Amendment rights.

**B.  Equal Protection Claim**

Petitioner's Equal Protection challenge is similarly unavailing. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This is not a command that all persons be treated alike, but, rather, a direction that all persons similarly-situated be treated alike. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "The

Equal Protection Clause commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" Vacco v. Quill, 521 U.S. 793, 799 (1997). "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race," Washington v. Davis, 426 U.S. 229, 239 (1976), or any other suspect classification. See, e.g., Bakke v. California Bd. of Regents, 438 U.S. 265, 291 (1978) ("the guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color" and "racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination"). Thus, although lawful imprisonment entails the necessary withdrawal or limitation of many rights and privileges, see Pell v. Procunier, 417 U.S. 817, 822 (1974), inmates have a constitutional right to be free from discrimination based on race and other "suspect classifications," such as alienage or country of origin. See Angstadt v. Midd-West Sch. Dist., 377 F.3d 338 (3d Cir. 2004); Bentley v. Beck, 625 F.2d 70, 70-71 (5th Cir. 1980).

Here, while Petitioner claims that he "raises [his] claim as being a member of a 'Suspect Class,'" Pet. at 14, Petitioner (1) does not state what "suspect class" he is a member of and, moreover, (2) simultaneously asserts that Petitioner's rights were violated when he "was separated into a previously never before created class

of one." Id. at 12. Since Petitioner cannot have it both ways, that is, alleging that he is a member of a suspect class and yet claiming that he is in the "class of one," the Court concludes that Petitioner either misuses or misunderstands the term "suspect classification." Indeed, Petitioner's allegations are race-, gender- or ethnicity-neutral (since Petitioner's Petition does not indicate that inmates of race, ethnicity/gender other than that of Petitioner's were consistently granted lenient sanctions while inmates of race, ethnicity/gender same as that of Petitioner's were consistently subjected to harsh sanctions), hence indicating that the prison officials at Fort Dix do not single out a *group* of inmates on the basis of suspect classification. See generally Pet. Therefore, Petitioner's Petition failed to allege any circumstances requiring this Court to apply the heightened level of scrutiny.[7]

Since the sanctions, as applied, neither burdened a fundamental right nor targeted a suspect class, this Court is obligated to uphold the decision reached by the prison officials so long as it bears a "rational relation to some legitimate end." Romer v. Evans,

---

[7] The level of scrutiny applied to ensure that classifications comply with this guarantee differs depending on the nature of the classification. Classifications involving a suspect or quasi-suspect class, or impacting certain fundamental constitutional rights, are subject to heightened scrutiny. Id. Other classifications, however, need only be rationally related to a legitimate government goal. See Chapman v. United States, 500 U.S. 453, 465 (1991) (applying rational basis test to classification based on nature of offense).

517 U.S. 620, 631 (1996). There is little doubt that the sanctions at issue bore a "rational relation to some legitimate end," since Petitioner's "Discipline Hearing Officer Report" expressly provided as follows:

> Use of . . . a cellular telephone and excess stamps[] demonstrates a disregard for the rules and regulations [and] may result in . . . criminal activity that may go undetected. [The sanctions at issue are] meant to demonstrate the seriousness of the offences to [Petitioner] as well as everyone incarcerated at [Fort Dix]. [The sanctions are] warranted as [the cellular phone and excess stamps are] known contraband items . . . introduced by visitors into correctional institutions, and all of the sanctions have proven effective in having individuals modify their behavior to acceptable standards.

Pet., Mem. Ex. 2 at 3.

Therefore, the Court finds that the sanctions at issue bore a rational relation to a legitimate penological end and, thus, did not violate Petitioner's Equal Protection rights.

## CONCLUSION

For the reasons set forth above, Petitioner's Petition is denied. An appropriate order follows.

S/Freda L. Wolfson<br>
**FREDA L. WOLFSON**<br>
**United States District Judge**

Dated: June 23, 2006